745 F.2d 1270
 1984-2 Trade Cases 66,261
 SPRINGS AMBULANCE SERVICE, INC., Plaintiff-Appellee,
v.
CITY OF RANCHO MIRAGE, CALIFORNIA; City of Indian Wells,
California; City of Palm Desert, California; and
Cove Communities Fire Commission,
Appellants-Defendants.
 No. 84-5509.
 United States Court of Appeals,
Ninth Circuit.
 Argued May 15, 1984.
Submitted Oct. 25, 1984.
Decided Oct. 25, 1984.
 
 Roderick G. Dorman, Richard A. Jones, Cox, Castle & Nicholson, Los Angeles, Cal., for plaintiff-appellee.
 Richard R. Terzian, Scott F. Field, Burke, Williams & Sorensen, Los Angeles, Cal., for appellants-defendants.
 Appeal from the United States District Court for the Central District of California.
 Before ANDERSON, SKOPIL and POOLE, Circuit Judges.
 POOLE, Circuit Judge:
 
 
 1
 A private ambulance company which had effectively been barred from the emergency ambulance market of three of the California desert cities when they decided to provide free municipal ambulance service brought this suit under federal antitrust laws. The cities appeal the district court's order denying their claim of immunity under Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). We reverse.
 
 I.
 
 2
 Plaintiff-appellee Springs Ambulance Service has provided both emergency and non-emergency ambulance service in Palm Springs, California, and surrounding communities in Riverside County since 1964.
 
 
 3
 In 1981, the three defendant cities--Rancho Mirage, Indian Wells, and Palm Desert--combined to form the Cove Communities Fire Commission ("Fire Commission"), in order to provide emergency fire suppression and ambulance service to these three cities. The Fire Commission contracted with Riverside County, which in turn engaged the California Department of Forestry to provide the needed ambulance service.
 
 
 4
 Springs complains that the cities' decision to provide emergency municipal ambulance service has effectively excluded it from the marketplace. Controlling California Highway Patrol regulations require that all calls for emergency ambulance service be referred to the local law enforcement or other public agency in charge of coordinating such calls, and that such agency then dispatch only the number of ambulances needed to the scene. 13 Cal.Admin.Code Sec. 1104(c)(2). Though primarily a traffic safety regulation, this scheme makes ambulance services entirely dependent on referrals from the public agency for emergency ambulance business. Following the formation of the Fire Commission, all calls for emergency service in the three cities have been referred first to the municipal contract provider, Riverside County. Appellee Springs has been dispatched only when the County was unable to respond to a call. Springs claims that through this arrangement the cities have monopolized the emergency ambulance service market within their borders and have engaged in an unlawful concerted refusal to deal with Springs, all in violation of the Sherman Act.[1]
 
 
 5
 Springs also claims that the cities have engaged in predatory pricing by providing their ambulance service below cost. The emergency municipal ambulance service is paid for by public revenues, and it is provided without charge to the patient.[2]
 
 
 6
 In addition to forming the Fire Commission, each of the three cities enacted ordinances setting maximum rates that may be charged by private ambulance companies, such as Springs, for emergency and non-emergency services. Springs acknowledges that two of the cities repealed their ordinances, but the status of the Rancho Mirage ordinance remains in doubt. It is discussed in section IV, below. Springs claims that this ordinance constitutes illegal price fixing.
 
 
 7
 The cities and the Fire Commission moved to dismiss the complaint on the ground that they are immune from federal antitrust liability under the doctrine of Parker v. Brown, supra. The district court denied the motion, but certified its ruling on state-action immunity as a controlling issue of law suitable for immediate appeal under 28 U.S.C. Sec. 1292(b). This court granted permission to appeal.
 
 II.
 
 8
 In Parker v. Brown, 317 U.S. 341, 352, 63 S.Ct. 307, 314, 87 L.Ed. 315 (1943), the Supreme Court held that the Sherman Act was not intended to apply to acts of the States "as sovereigns." More recent decisions have made clear, however, that this state-action immunity does not apply automatically to the state's political subdivisions. In Lafayette v. Louisiana Power & Light Co., 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978), the Court held that a municipality could be sued under federal antitrust laws when it adopted a scheme tying purchase of electrical power from a municipal utility to continued access to city water and gas service. A plurality of the court stated that "the Parker doctrine exempts only anticompetitive conduct * * * by [state political] subdivisions, pursuant to state policy to displace competition with regulation or monopoly public service." 435 U.S. at 413, 98 S.Ct. at 1137. That state policy, it was stressed, must be "clearly articulated and affirmatively expressed." Id. at 410, 98 S.Ct. at 1135.
 
 
 9
 The opinion of the Lafayette plurality was confirmed by a majority of the court in Community Communications v. Boulder, 455 U.S. 40, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982). There, the Court held that a cable television moratorium imposed by the City of Boulder, Colorado, was not shielded by Parker v. Brown antitrust immunity, despite the city's argument that, under the Colorado constitution, as a "home rule city" Boulder possessed full right of self-government in local matters, to the exclusion even of the state legislature. Such a blanket grant of authority, the Court declared, did not satisfy "the requirement of 'clear articulation and affirmative expression.' " 455 U.S. at 55, 102 S.Ct. at 843.
 
 
 10
 Acceptance of such a proposition--that the general grant of power to enact ordinances necessarily implies state authority to enact specific anticompetitive ordinances--would wholly eviscerate the concepts of 'clear articulation and affirmative expression' that our precedents require.
 
 
 11
 455 U.S. at 56, 102 S.Ct. at 843.
 
 
 12
 This circuit, following Lafayette and Boulder, has held that state policy must satisfy a two part test in order to provide the basis for municipal Parker v. Brown immunity:
 
 
 13
 To prove that a policy is clearly articulated and affirmatively expressed, the City must demonstrate not only the existence of a state policy to displace competition with regulation, but also that the legislature contemplated the kind of actions alleged to be anticompetitive.
 
 
 14
 Golden State Transit Corp. v. City of Los Angeles, 726 F.2d 1430, 1433 (9th Cir.1984) (Los Angeles taxicab regulations found to be supported by "clearly articulated and affirmatively expressed" state policy).
 
 III.
 
 15
 The cities point to a number of California statutes regulating ambulances within the state, but one in particular is relevant to the present case. California Government Code Sec. 38794 states in full:
 
 
 16
 The legislative body of a city may contract for ambulance service to serve the residents of the city as convenience requires.
 
 
 17
 This statute affirmatively authorizes cities to provide ambulance services to their residents. Moreover, the language of the statute, particularly the emphasis on "service" for the residents, seems to contemplate provision of municipal ambulance service without cost, in the same manner as police or fire protection service. Since the contract authorized by statute is between the city and the provider of ambulance service, it is reasonable to suppose that the legislature contemplated that the city would pay for the services.
 
 
 18
 The statute does not, in so many words, also authorize cities to abolish competition from private ambulance companies. However, Lafayette and Boulder do not require that the state authorization be so bald. "[A] political subdivision [need not] be able to point to a specific, detailed legislative authorization before it properly may assert a Parker defense to an antitrust suit." Lafayette, 435 U.S. at 415, 98 S.Ct. at 1138. The Eighth Circuit, facing a similar case, has stated that "sufficient state policy to displace competition exists if the challenged restraint is a necessary or reasonable consequence of engaging in the authorized activity." Gold Cross Ambulance & Tran. v. City of Kansas City, 705 F.2d 1005, 1013 (8th Cir.1983) (emphasis added). See also Cen. Iowa Ref. Sys. v. Des Moines Metro. Sol. Waste, 715 F.2d 419, 427 (8th Cir.1983) (same); Town of Hallie v. City of Eau Claire, 700 F.2d 376, 381 (7th Cir.1983), cert. granted, --- U.S. ----, 104 S.Ct. 3508, 82 L.Ed.2d 818 (1984) ("reasonable or forseeable consequence"). In Gold Cross, the court found that a municipal ordinance permitting only a single ambulance service to pick up patients within the city boundaries was contemplated by the legislature when it passed a statute authorizing the city to "contract with one or more individuals * * * " to provide emergency ambulance service.
 
 
 19
 Here, the exclusion of private ambulance companies is a necessary or reasonable consequence of providing subsidized municipal ambulance service, and was surely within the contemplation of the legislature when it enacted Gov't Code Sec. 38794. Where the residents of a city pay taxes to make emergency ambulance service available, it would be anomalous to require that the city also dispatch a private for-hire service with, or in alternation with, its own. To do so would, in effect, force citizen users to pay twice for the same service, once for the private carrier that is dispatched to them, and again for the public service supported with their taxes but not used. We conclude that Gov't Code Sec. 38794 provides a sufficiently clear expression of state policy to permit California municipalities to provide exclusive, free emergency municipal ambulance service.
 
 IV.
 
 20
 There still remains for consideration, however, Rancho Mirage's alleged price-setting ordinance. Whereas statutory provision for public emergency ambulance service reasonably may contemplate exclusion of private ambulance services, it does not necessarily follow that such an authorization also confers the power to dictate charges for private ambulance services when they are sought. For example, the Rancho Mirage ordinance, as described by the parties, applies to rates for both emergency and non-emergency ambulance service. The Fire Commission does not provide non-emergency ambulance service, and as to that business, Springs presumably still competes with any other private ambulance services in the area. Neither Gov't Code Sec. 38794, nor any other statute cited by appellants, would appear to authorize interference with that competition by setting uniform maximum rates.
 
 
 21
 Nevertheless, we need not reach this issue because our own reading of the relevant Rancho Mirage ordinances casts doubt whether the price-setting provision is still in effect. The city's price-setting authority was contained in Sec. 5.09.170 of the Rancho Mirage Municipal Code, enacted by Ordinance 241, March 4, 1982. As originally enacted, that section stated that "The City Council shall establish and keep on file with the City Clerk, a maximum rate schedule" for ambulance service.
 
 
 22
 The original language of Sec. 5.09.170 was superseded, however, by Ordinance 256, adopted October 21, 1982. The new section requires only that a copy of the "rate schedule currently in effect * * * be conspicuously posted" in every licensed ambulance. The new section omits all reference to the City Council's former power to set maximum ambulance rate schedules.
 
 
 23
 Springs argues that, despite the superseding ordinance, it remains bound by the rates enacted by the City Council during the brief lifetime of Ordinance 241. Those rates, which have never been explicitly repealed, set maximum base rate of $72, plus $4 per mile. Rancho Mirage replies that, as administrative enactments, these rate setting resolutions expired when Ordinance 241 was superceded, and that the words, "rate schedule currently in effect," in Ordinance 256 refer to the rate schedule determined by the private ambulance service itself. It offers affidavits and documentary evidence of contemporaneous administrative construction of Ordinance 256 in support of its position.
 
 
 24
 Neither this evidence nor these arguments were ever presented to the district court. Indeed, in argument before us, the cities did not contest Springs' assertion that the Rancho Mirage price-setting ordinance was still in effect until this court raised the question after its own research suggested otherwise. Since the district court has not had the opportunity to rule on this issue, and since the evidence of contemporaneous administrative construction is not properly a part of the record of this appeal, we remand for the district court to determine whether Ordinance 256 left Rancho Mirage with residual power over prices for private ambulance service.
 
 V.
 
 25
 The California Legislature has affirmatively expressed and clearly articulated a policy to allow municipalities to provide free ambulance services for their residents. Exclusion of private ambulance services is a reasonable and foreseeable consequence of authorizing such municipal ambulance service, and logically within the contemplation of the legislature in enacting Gov't Code Sec. 38794. Therefore, appellants' Parker v. Brown defense to appellee's claims of monopolization and predatory pricing should have been sustained.
 
 
 26
 Appellee's price fixing allegations, which raise different and more difficult Parker v. Brown problems, may be mooted should the district court find that Rancho Mirage's price-setting power has been repealed. Consequently, the district court on remand should take appropriate steps to determine whether Rancho Mirage's alleged price-fixing ordinance has been repealed. If the district court determines that the ordinance is still in effect, it should reconsider the validity of the ordinance under the federal antitrust laws in light of this opinion. Jurisdiction over any further appeal of this case, including any subsequent certification under 28 U.S.C. Sec. 1292(b), shall be retained by this panel.
 
 
 27
 The order of the district court denying appellants' motion to dismiss is REVERSED IN PART and REMANDED.
 
 
 
 [1]
 Springs still provide non -emergency ambulance service in the three cities, for which the cities and the Fire Commission do not compete
 
 
 [2]
 Springs also claims that the cities violated California law by using funds from special fire-suppression assessment districts for ambulance services. These allegations were not considered by the district court in its decision, and are irrelevant to the issue now before us. We make no ruling on them