**CALIFORNIA AVIATION, INC.,**
**Plaintiff/Appellant,**

v.

**CITY OF SANTA MONICA,**
**Defendant/Appellee.**

No. 85–6494.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 4, 1986.

Decided Dec. 17, 1986.

Arthur Leeds, Los Angeles, Cal., for plaintiff/appellant.

Martin Tachiki, Santa Monica, Cal., for defendant/appellee.

Before SCHROEDER, CANBY AND THOMPSON, Circuit Judges.

CANBY, Circuit Judge.

California Aviation, Inc. (California Aviation) sued the City of Santa Monica (City), alleging that the City engaged in unlawful price fixing and unfair competition in the execution of a lease with California Aviation at Santa Monica Municipal Airport. The district court granted the City's motion for summary judgment on three alternative grounds: (1) that the state antitrust immunity doctrine exempted the City from federal antitrust liability; (2) that the challenged lease was neither unlawful *per se* nor un-

lawful under the rule of reason; and (3) that California Aviation's complete involvement in the formation of the challenged lease barred it from attacking the lease. California Aviation appeals from the district court's entry of summary judgment. We agree with the first ground relied upon by the district court, that the state action immunity doctrine exempts the City from federal antitrust liability. We therefore affirm without ruling upon the second and third alternative grounds.

## BACKGROUND

In 1966, California Aviation and the City entered into a thirty-year lease at Santa Monica Municipal Airport. The lease authorized California Aviation to sell fuel and other petroleum products and to rent hangar and tie-down facilities at the airport. The lease also provided that California Aviation could charge no less for petroleum products than the City charged. California Aviation contends that this lease provision violates the Sherman Act, 15 U.S.C. §§ 1–7 (1982).

## DISCUSSION

■ Under the state action immunity doctrine first articulated in *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), anticompetitive activity by the states is outside the scope of the federal antitrust laws. Anticompetitive activity by a municipality is likewise exempt from federal antitrust liability when the municipality acts pursuant to a clearly articulated and affirmatively expressed state policy to displace competition with regulation. *Lor-*

*rie's Travel & Tours, Inc. v. SFO Airporter, Inc.,* 753 F.2d 790, 792 (9th Cir.1985). To establish that the state's policy is clearly articulated and affirmatively expressed, the City must show that there is a state policy to displace competition and that the legislature contemplated the kind of municipal actions alleged to be anticompetitive. *Lorrie's Travel & Tours, Inc. v. SFO Airporter, Inc., Id.* at 792; *Golden State Transit Corp. v. City of Los Angeles,* 726 F.2d 1430, 1433 (9th Cir.1984), *cert. denied,* 471 U.S. 1003, 105 S.Ct. 1865, 85 L.Ed.2d 159 (1985). We have consistently assumed that a state legislature contemplated a municipal restraint on competition if the restraint was a necessary or reasonable consequence of engaging in anticompetitive activity authorized by the legislature. *Lorrie's Travel & Tours, Inc. v. SFO Airporter, Inc., Id.* at 793; *Springs Ambulance Service, Inc. v. City of Rancho Mirage,* 745 F.2d 1270, 1273 (9th Cir.1984).[1]

■ California Aviation contends that the state action immunity doctrine does not exempt the City from antitrust liability in this case because no state statute clearly articulates and affirmatively expresses a state policy of allowing municipalities to fix the minimum price of fuel at airports. We agree, however, with the district court that the State of California has enacted a comprehensive statutory scheme that articulates a state policy to displace competition at municipal airports. *See* Cal.Pub.Util. Code §§ 21690.5–21690.10 (West Supp. 1986); Cal.Gov't.Code §§ 50470 and 50474 (West 1983); Cal.Penal Code § 602.4 (West Supp.1986);[2] *see also Lorrie's Travel &*

---

1. The Supreme Court recently affirmed a dismissal under the state action immunity doctrine because the allegedly anticompetitive municipal conduct "logically would result from" conduct authorized by the state legislature. *Town of Hallie v. City of Eau Claire,* 471 U.S. 34, 105 S.Ct. 1713, 1718, 85 L.Ed.2d 24, 31 (1985).

2. The important statutory provisions are found in §§ 21690.7 and 21690.8:

   The governing bodies of publicly owned or operated airports shall manage airport facilities and grant airport concessions in furtherance of the development of commerce and

tourism in or affecting the state. In managing facilities and granting concessions for services to the public, such airport governing bodies shall promote the development of commerce and tourism by ... (d) limiting or prohibiting business competition which is destructive of the ends of promoting commerce and tourism in the state; ....

Cal.Pub.Util.Code § 21690.7 (West Supp.1986).

   The Legislature recognizes that to further the policies and fulfill the objectives stated in this article, it is often necessary that publicly owned or operated airports enter into exclusive or limited agreements with a single operator or a limited number of operators. The

*Tours, Inc. v. SFO Airporter, Inc., Id.* at 793. We also agree with the district court that the state legislature contemplated the kind of municipal activity at issue in this case. The California legislature expressly stated that it "contemplates that publicly owned or operated airports will grant exclusive or limited agreements in furtherance of the policy of this state to displace business competition...." Cal.Pub.Util. Code § 21690.8 (West Supp.1986). The price restrictions in California Aviation's lease with the City are a limited agreement to displace competition with regulation in the provision of certain aviation services, and they are clearly a reasonable consequence of engaging in the authorized activity of limiting business competition at municipal airports. *Lorrie's Travel & Tours, Inc. v. SFO Airporter, Inc., Id.* at 793. We therefore hold that the challenged provisions in the City's lease with California Aviation were executed pursuant to a clearly articulated and affirmatively expressed policy to displace competition with regulation, and that they are exempt from scrutiny under the federal antitrust laws.[3]

■ California Aviation argues, however, that the California statutes governing airport facilities should not be interpreted to express a state policy of displacing competition with regulation because such an interpretation would bring the state statutes into conflict with federal law. We disagree. Federal Aviation Administration regulations found at 14 C.F.R. § 151.121 (1986) state in relevant part:

The sponsor—

\* \* \* \* \* \*

 (b) Agrees that ... it will not, either directly or indirectly, grant or permit any person, firm or corporation the *exclusive right* at the airport ... to conduct any aeronautical activities, including ... sale of aviation petroleum products....

14 C.F.R. § 151.121 (1986) (emphasis added). California Aviation contends that 14 C.F.R. § 151.121 would preempt California state law if state law were interpreted to authorize anticompetitive agreements at municipal airports, and that such an interpretation therefore cannot stand. Yet 14 C.F.R. § 151.121 forbids only agreements that grant exclusive rights to conduct aeronautical activities, and the challenged provisions in California Aviation's lease with the City do not grant any such exclusive right. Section 3.06 of the lease is explicit on this point:

Developer shall have the *non-exclusive* right to sell petroleum products to those persons whose planes are stored in hangars or tied down on the airport, or to those persons operating transient aircraft on the Airport. (emphasis added)

There is accordingly no conflict between state and federal law in this case, and no need to interpret the state statute in light of a threat of federal preemption.

■ California Aviation likewise argues that the Emergency Petroleum Allocation Act (Petroleum Act), 15 U.S.C. §§ 751–760 (1982) would preempt section 21690.8 if the latter provision were construed to authorize agreements restricting the price of petroleum products at municipal airports. Again, we disagree. The Petroleum Act granted the President "specific temporary authority to deal with shortages of crude oil, residual fuel oil, and refined petroleum

---

governing bodies of publicly owned or operated airports shall grant exclusive or limited agreements to displace business competition with regulation or monopoly service whenever the governing body determines, in consideration of the factors set forth in Section 21690.9, that such agreements are necessary to further the policies and to fulfill the objectives stated in this article. The Legislature contemplates that publicly owned or operated airports will grant exclusive or limited agreements in furtherance of the policy of this state to displace business competition by exclusive

or limited agreements to fulfill these policies and objectives.

Cal.Pub.Util.Code § 21690.8 (West Supp.1986).

3. We agree with the district court that the state legislature has gone beyond the minimum expression of state policy required to establish municipal immunity under the state action immunity doctrine. *See Town of Hallie v. City of Eau Claire,* 471 U.S. 34, 105 S.Ct. 1713, 1718, 85 L.Ed.2d 24, 31 (1985) (state policy to displace competition may be inferred from grant of "broad authority to regulate").

products or dislocations in their national distribution system." 15 U.S.C. § 751(b) (1982). We see no evidence that Congress intended to occupy entirely the field of petroleum price regulation, and California Aviation does not suggest that the price restrictions authorized by section 21690.8 led to prices that exceeded federal guidelines. Again, there is no need to interpret the state statute in light of a threat of federal preemption, because there is no conflict between state and federal law in the present case.[4]

■ California Aviation makes two additional arguments against the application of the state action immunity doctrine in this case. First, it notes that Cal.Pub.Util.Code §§ 21690.5–21690.10 were enacted in 1982, and it contends that those statutes cannot confer retroactive immunity upon a lease that was signed in 1966. We disagree. Sections 21690.5–21690.10 were intended to articulate and affirm a pre-existing state policy of allowing municipalities to enter into anticompetitive agreements at public airports. This legislative intent is evident in the last sentence of section 21690.5:

4. We do not decide the question whether preemption of a state statute by federal law other than antitrust law nullifies that state statute for purposes of conferring state antitrust immunity on municipalities.

5. In other state antitrust immunity cases, this court has found that statutes enacted after allegedly anticompetitive conduct expressed pre-existing state policies to displace competition. *See Mercy-Peninsula Ambulance v. San Mateo County,* 791 F.2d 755, 757 n. 1, 758 n. 2 (1986); *Lorrie's Travel & Tours, Inc. v. SFO Airporter, Id.* at 793.

6. Section 21690.9 states:
    Before entering any exclusive or limited agreement in connection with the management of any airport facility or the operation of any airport concession, the governing body of a publicly owned or operated airport shall, under authority hereby expressly delegated by the state, determine the necessity for an exclusive or limited agreement. The governing body shall consider the following factors to determine the necessity for an exclusive or limited agreement to further the policies and objectives stated in this article:
    (a) Public safety.

Therefore, since the proper operation of the state's publicly owned or operated airports is essential to the welfare of the state and its people, the Legislature *recognizes and affirms* such operation as a governmental function to be discharged in furtherance of the policy of securing the benefits of commerce and tourism for the state and its people.

Cal.Pub.Util.Code § 21690.5 (West.Supp. 1986) (emphasis added).[5]

■ Finally, California Aviation argues that §§ 21690.5–21690.10 cannot exempt the City from antitrust liability because the City has failed to "determine the necessity" of the anticompetitive agreement, as required by section 21690.9.[6] We disagree. The lease itself indicates that the City determined that its airport policies were necessary,[7] and section 21690.9 requires no hearings or findings of fact.

Because we hold that the state antitrust immunity doctrine protects the City from liability in this case, we do not consider whether the challenged lease would be unlawful *per se* or unlawful under the rule of reason. We also do not consider whether

    (b) Public convenience.
    (c) Quality of service.
    (d) The need to conserve airport space.
    (e) The need to avoid duplication of services.
    (f) The impact on the environment or facilities of the airport as an essential commercial and tourist service center.
    (g) The need to avoid destructive competition which may impair the quality of airport services to the public, lead to uncertainty, disruption, or instability in the rendering of such services, or detract from the state's attractiveness as a center of tourism and commerce.
    *In making its determination, the airport operator shall not be required to take evidence or to make findings of fact.*
    Cal.Pub.Util.Code § 21690.9 (West Supp.1986) (emphasis added).

7. The lease states that the City "as part of its program of developing [the airport] to its highest and best use" commissioned the preparation of an airport development plan that "establishes and determines the City's policies with respect to uses to be permitted and followed at and in the vicinity of the Airport." The challenged lease was adopted pursuant to this development plan.

California Aviation's involvement in the formation of the lease would bar it from attacking the lease.

AFFIRMED.