**WASHINGTON STATE ELECTRICAL CONTRACTORS ASSOCIATION, INC., a Washington corporation, et al., Plaintiffs–Appellants,**

v.

**Frank FORREST, Mac Johnson, Harold Wilson, Lloyd Wilson, Charles Mason, G. David Hutchins, State of Washington, and State of Washington, Department of Labor & Industries, Defendants–Appellees.**

No. 85–4232.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 9, 1987.

Decided Feb. 8, 1988.

---

Jerry B. Edmonds and Judd H. Lees, Bellevue, Wash., for plaintiffs-appellants.

Robert G. Swenson, Asst. Atty. Gen., Office of the Atty. Gen., Seattle, Wash., for defendants-appellees.

Before GOODWIN[*] and BEEZER, Circuit Judges, and NIELSEN,[**] District Judge.

GOODWIN, Circuit Judge:

A trade association of nonunion electrical contractors and others sued the State of Washington Department of Labor and Industries, the individual members of the Washington State Apprenticeship and Training Council and others for antitrust damages, injunctive and declaratory relief. The plaintiffs appeal a summary judgment holding that the state department of labor and the apprenticeship council and their members are immune from antitrust liability under the state-action doctrine first explained in the California raisin cartel case, *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). We affirm.

The Council is established by the State of Washington's Apprenticeship Act. Wash. Rev.Code § 49.04.010 et seq. The Council consists of seven voting members. The state Director of Labor and Industries appoints six Council members, divided evenly among representatives of employees and employers. The Governor appoints a public member to the Council. In addition, two state officials serve without vote as ex officio members of the Council. Wash.Rev. Code § 49.04.010.

The Act directs the Council to "[e]stablish standards for apprenticeship agreements in conformity with the provisions of this chapter" and to "issue such rules and regulations as may be necessary to carry out the intent and purposes of this chapter." Wash.Rev.Code § 49.04.010. An apprenticeship agreement is a written agreement between an employer or association of employers and an individual apprentice or organization of employees describing the conditions of an apprenticeship and the program of apprenticeship training in the particular trade or craft. Wash.Rev.Code §§ 49.04.050, .060. The Act itself contains some standards for apprenticeship agreements, including requirements concerning length of an apprenticeship, allocation of apprenticeship hours to work and instruction, minimum age, Wash.Rev.Code §§ 49.-04.050(1)–(4), and a requirement of a "progressively increasing wage scale," Wash. Rev.Code § 49.04.050(5).

One of the Council's functions is to approve apprenticeship training program agreements submitted by organizations seeking to become apprenticeship program sponsors. In 1980, the Council promulgated Regulation 296–04–270. Wash.Admin.Code § 296–04–270 (1983). Regulation 296–04–270 sets forth certain requirements and establishes standards by which proposed apprenticeship agreements would be evaluated by the Council. This appeal centers on a subpart of Regulation 296–04–270. In its current form, Subpart (2)(c) provides as follows:

The statement of the progressively increasing scale of wages, RCW 49.04.-

---

[*] This case was argued before Judges Kennedy, Beezer and Neilsen. Judge Goodwin was drawn to replace Judge Kennedy. He has read the briefs, reviewed the record and listened to the tape of oral argument held on September 9, 1987.

[**] The Honorable Leland C. Nielsen, United States District Judge, Southern District of California, sitting by designation.

050(5), shall provide for a set percentage of a specified journeyman wage. In no event shall the specified journeyman wage from which the apprentice's percentages are computed fall below eighty percent of the established prevailing basic wage computed by the industrial statistician of the department of labor and industries has not computed such a prevailing basic wage, the prevailing basic wage for the craft for the area set by the United States Department of Labor pursuant to the Davis–Bacon Act, 40 U.S.C. § 276, may be used.

Wash.Admin.Code § 296–04–270(2)(c) (1986).[1] The established prevailing basic wage reflects the wage set by collective bargaining in the area. In essence, Regulation 296–04–270(2)(c) prescribes a minimum wage for apprentices based on prevailing rates set by unions and union employers.

Appellants claim Regulation 296–04–270(2)(c) adversely affects their ability to compete with union employers for public construction contracts by fixing prices in violation of the federal antitrust laws. They contend that the regulation forces them to make an economically impossible choice. If the nonunion employers comply with the regulation, they have to pay union wages to their nonunion apprentices on both public and private contracts, thereby inflating their wage scales for nonunion journeymen as well. If the nonunion employers fail to comply with the regulation, they forego Council approval.

Without Council approval of its apprenticeship agreement, an employer must pay journeyman rates for apprentices on public contracts. Wash.Rev.Code § 39.12.021. Employers with Council-approved apprenticeship agreements, however, may pay their apprentices lower wage rates as provided in the apprenticeship agreement itself. *Id.* Because union employers pay their apprentices union wage rates anyway, they routinely satisfy Regulation 296–04–270(2)(c) and obtain Council approval of their apprenticeship agreements.

Appellants argue that Regulation 296–04–270(2)(c) thus prevents them from bidding competitively for public contracts against union employers. Appellants contend that the statutory scheme is defective on two counts: improper delegation and inadequate supervision.

■ *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, is the starting point in any analysis involving the state-action immunity doctrine. In *Parker*, the Supreme Court, relying on principles of federalism and state sovereignty, held that Congress did not intend the Sherman Act "to restrain a state or its officers or agents from activities directed by its legislature" that restrict or otherwise regulate competition. *Id.* at 350–51, 63 S.Ct. at 313; *see Southern Motor Carriers Rate Conf. v. United States*, 471 U.S. 48, 55–56, 105 S.Ct. 1721, 1725–26, 85 L.Ed.2d 36 (1985); *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 38–39, 105 S.Ct. 1713, 1716–17, 85 L.Ed.2d 24 (1985); *Patrick v. Burget*, 800 F.2d 1498, 1505 (9th Cir.1986), *cert. granted,* —— U.S. ——, 108 S.Ct. 65, 98 L.Ed.2d 29 (1987). Thus, if a particular act is an action of the state, it is generally exempt from the operation of federal antitrust laws. *Hoover v. Ronwin,*

1. The Council has amended Subpart (2)(c) since this lawsuit began. Subpart (2)(c) as amended now governs the parties; it raises the same issues as before. In its original form Subpart (2)(c) provided:

> The statement of the progressively increasing scale of wages (RCW 49.04.050(5)) shall provide that the entry level wage for all apprentices shall be at least a percentage of the journeymen scale set by the applicable collective bargaining agreement or at least a percentage of the prevailing wage for the craft for the area set by the United States Department of Labor pursuant to the Davis–Bacon Act (40 USC Sec. 276) where no collective

> bargaining agreement is in effect. In the event an apprenticeship program is proposed for an area already served by an apprenticeship program, the new program's wage scale shall be identical to or greater than that of an existing program. In the event an apprenticeship program is proposed for a craft or area in which there is no collective bargaining agreement, no Davis–Bacon Act prevailing wage, and no existing apprenticeship program, the applicant shall request the statistician of the department of labor and industries set a prevailing wage for the specific area and craft to be incorporated into the proposed agreement.

466 U.S. 558, 567–68, 104 S.Ct. 1989, 1994–95, 80 L.Ed.2d 590 (1984).

■ In the years following the decision in *Parker,* the Supreme Court has refined the scope of the state-action doctrine. The legislative actions of a state legislature and the "legislative" decisions of a state supreme court have been held exempt from antitrust liability as state action. *Hoover,* 466 U.S. at 567–68, 104 S.Ct. at 1994–95 (citing *Bates v. State Bar of Arizona,* 433 U.S. 350, 360, 97 S.Ct. 2691, 2697, 53 L.Ed.2d 810 (1977)). However, when the anticompetitive activity in question is not directly that of the state legislature or supreme court, but is carried out by others pursuant to state authorization, "closer analysis" is required to determine whether the activity is attributable to the state and whether state-action immunity applies. *Hoover,* 466 U.S. at 568, 104 S.Ct. at 1995; *Patrick,* 800 F.2d at 1505.

■ Under certain conditions, even anticompetitive activities by private parties may qualify for *Parker* state-action immunity. *Southern Motor Carriers,* 471 U.S. at 57, 105 S.Ct. at 1726. The Supreme Court has established a two-part test to determine whether *Parker* immunity is available to private parties, and to municipalities or state agencies regulating the activity of private parties. *Southern Motor Carriers,* 471 U.S. at 57, 105 S.Ct. at 1726; *California Retail Liquor Dealers v. Midcal Aluminum,* 445 U.S. 97, 105–06, 100 S.Ct. 937, 943, 63 L.Ed.2d 233 (1980); *Llewellyn v. Crothers,* 765 F.2d 769, 773 (9th Cir.1985). First, we must determine whether the challenged activity is pursuant to a clearly articulated and affirmatively expressed state policy to replace competition with regulation. *Southern Motor Carriers,* 471 U.S. at 57, 105 S.Ct. at 1727; *Hoover,* 466 U.S. at 569, 104 S.Ct. at 1995; *Midcal Aluminum,* 445 U.S. at 105, 100 S.Ct. at 943. Second, we must determine the extent to which the state is required to supervise the challenged conduct.

■ This "active supervision" requirement itself involves two separate inquiries. Before determining whether the state does in fact actively supervise the anticompetitive conduct of its agents, we must first determine whether the active supervision requirement applies to the anticompetitive actors in the particular case presented. The state must actively supervise anticompetitive conduct by private parties. *Southern Motor Carriers,* 471 U.S. at 57, 105 S.Ct. at 1727. Active state supervision, however, is not a prerequisite to state-action immunity when a municipality engages in anticompetitive activity. *Town of Hallie,* 471 U.S. at 47, 105 S.Ct. at 1720. Thus, in this case, we are called upon to determine whether the Council must be actively supervised by the state or, like a municipality, must only satisfy the first part of the state-action immunity test, that is, that the Council is acting pursuant to an affirmatively expressed directive of the state legislature.

■ At the outset, we reject defendant's contention that the Council's actions are in effect actions of the state legislature as sovereign and therefore "absolutely immune" from antitrust scrutiny. A clear distinction exists between acts undertaken by the legislature or state supreme court and acts delegated to and carried out by others "pursuant to state authorization." *Hoover,* 466 U.S. at 568, 104 S.Ct. at 1995. Only the former are absolutely immune. *Id.* at 567–68, 104 S.Ct. at 1994–95, *citing Parker,* 317 U.S. at 350–51, 63 S.Ct. at 313. The legislative actions of a state legislature or supreme court do not require extensive scrutiny to determine whether they are guided by an articulated and express state policy or are conducted under the supervision of the state because such actions constitute "those of the State" itself. 466 U.S. at 567–68, 104 S.Ct. at 1995. Such scrutiny, however, is required when agents of the state rather than the state itself conduct anticompetitive activities. The Supreme Court has, for example, closely scrutinized a municipality regulating the cable television industry, *Community Communications Co. v. Boulder,* 455 U.S. 40, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982), a private price-fixing arrangement authorized by state statute, *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.,*

445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980), and a state administrative board regulating new franchises, *New Motor Vehicle Bd. of California v. Orrin W. Fox Co.,* 439 U.S. 96, 99 S.Ct. 403, 58 L.Ed.2d 361 (1978), to determine whether the activity in issue was carried out pursuant to state authorization. The Council's exercise of delegated rulemaking authority clearly fits within this latter type of activity, and thus must satisfy the two-part test for state-action immunity. *Cf. Town of Hallie,* 471 U.S. at 46 n. 10, 105 S.Ct. at 1720 n. 10 (retaining clear and express state authorization requirement while suggesting active supervision requirement may not apply to state agencies); *Patrick,* 800 F.2d at 1507 (acts of a state agency official are immune if "taken pursuant to express state policy").

We now consider the first part of the state action immunity test: whether the Council's anticompetitive actions are firmly based on a clearly articulated and affirmatively expressed policy of the State of Washington. To satisfy this "clear articulation" requirement, the Council must demonstrate not only the existence of a state policy to displace competition with regulation in the relevant market, but also that the legislature contemplated the kind of anticompetitive actions at issue. *Golden State Transit Corp. v. City of Los Angeles,* 726 F.2d 1430, 1433 (9th Cir.1984). State policy, however, may be inferred from the breadth of the Council's statutory authority to regulate. The Washington Apprenticeship Act neither must detail nor compel the specific anticompetitive actions of the Council to "clearly articulate" a state policy to displace competition with regulation in the apprenticeship labor market. *Town of Hallie,* 471 U.S. at 43–46, 105 S.Ct. at 1718–20 (legislatures cannot be expected to catalog all of the anticipated effects of an apprenticeship statute); *Grason Elec. v. Sacramento Mun. Utility Dist.,* 770 F.2d 833, 836–37 (9th Cir.1985). Further, a showing that the restraint in issue was a necessary or reasonable consequence of engaging in anticompetitive activity authorized by the legislature may satisfy the "clear articulation" require-

ment. *California Aviation, Inc. v. City of Santa Monica,* 806 F.2d 905, 907 (9th Cir. 1986).

Washington's statutory scheme clearly grants the Council broad regulatory powers, including the authority to issue the challenged type of wage regulation. The Washington Apprenticeship Act grants the Council regulatory authority in broad terms:

> The apprenticeship council with the consent of employee and employer groups shall: (1) Establish standards for apprenticeship agreements in conformity with the provisions of this chapter; (2) issue such rules and regulations as may be necessary to carry out the intent and purposes of this chapter, including a procedure to resolve an impasse should a tie vote of the council occur; and (3) perform such other duties as are hereinafter imposed.

Wash.Rev.Code § 49.04.010. The Act itself sets out several standards for apprenticeship agreements that outline the "intent and purposes" of the statutory scheme. Statutory standards require an apprenticeship agreement to state the trade or craft to be taught, the duration of the apprenticeship, the stages and skills learned as the apprentice progresses, the apportionment of the apprenticeship between work and instruction, and the probationary period during which either employee or employer may request termination of the apprenticeship agreement. Wash.Rev.Code § 49.04.050. Moreover, the Act imposes several restraints similar to the Council regulation at issue. The Act requires that the apprenticeship duration be at least 2,000 hours, the apportionment of work and instruction in the apprenticeship agreement to provide for at least 144 hours per year of instruction, the apprentice to be at least 16 years of age, and the employer to pay a progressively increasing scale of wages to an apprentice. *Id.* A registered apprenticeship program must also comply with the Act's statutory affirmative action requirements. Wash.Rev.Code §§ 49.04.100–.110.

The Act creates an apprenticeship structure with reciprocal benefits and burdens

to the employer and employee in a registered apprenticeship program. Though Washington has chosen not to impose the Act's requirements on all apprenticeship programs, Wash.Rev.Code § 49.04.070, the Act outlines a comprehensive apprenticeship program, and expressly directs the Council to provide further specific rules, standards, and regulations to complete the statutory scheme. *Cf. Lorrie's Travel & Tours, Inc. v. SFO Airporter, Inc.,* 753 F.2d 790, 793 (9th Cir.1985) (statutory scheme granting limited discretion to municipality to restrict competition grants municipality authority to restrict competition in a manner consistent with the pertinent legislation). In particular, Regulation 296–04–270's wage rule is similar in kind to the restraints imposed by the legislature itself. A minimum wage provision or similar mechanism is a "foreseeable result" of the Council's responsibility to ensure that the statutory directive of a progressively increasing scale of wages is not avoided nor meaningless. *Town of Hallie,* 471 U.S. at 42, 105 S.Ct. at 1718. This court has recognized that a state legislature must be assumed to have contemplated the use of restraints on competition that are a reasonable consequence or necessary corollary of anticompetitive restrictions authorized by the legislature. *California Aviation,* 806 F.2d at 907; *Lorrie's Travel & Tours,* 753 F.2d at 793. The Act's statutory standards were not intended to be the exclusive standards governing apprenticeship programs in Washington. The Council's grant of authority "to carry out the intent and purposes" of the Act's apprenticeship scheme implies an authority to develop rules and regulations elaborating the general statutory standards such as the wage regulation at issue.

■■■ Our next inquiry regarding the application of the active supervision requirement raises some significant questions. Appellees contend that the active supervision requirement for state action immunity does not apply to the Council as a state agency. In *Town of Hallie,* the Supreme Court noted that the active supervision requirement may not apply to state agencies.

471 U.S. at 46 n. 10, 105 S.Ct. at 1720 n. 10. This result may follow from the state agency's role as implementor and administrator of state legislative programs and policy. *See Southern Motor Carriers Rate Conf., Inc. v. United States,* 471 U.S. 48, 50–52, 66, 105 S.Ct. 1721, 1723–24, 1731, 85 L.Ed.2d 36 (1985) (describing statutory system of state agency review of privately-sponsored rate proposal, and noting Government's acknowledgment that the "States, through their agencies, actively supervise the conduct of private parties"). This court, in *Patrick v. Burget,* did not require active supervision of a state medical board of examiners to find that an individual board member's actions were immune from antitrust liability. 800 F.2d at 1506–07. Though the medical examiners board was composed of private doctors authorized by state statute to conduct peer review proceedings, we concluded that "[a]ctions within the scope of a state official's authority, taken pursuant to express state policy, which are contemplated by the statutory scheme, are actions of the state and therefore immune." *Id.* at 1507.

While we note the similarity between the status of the individual members of the medical board in *Patrick* and the members of the Council, we also perceive certain problems when a state agency is staffed with individuals who represent private interests. The Supreme Court has described the supervision requirement as serving "essentially an evidentiary function: it is one way of ensuring that the actor is engaging in the challenged conduct pursuant to state policy." *Town of Hallie,* 471 U.S. at 46, 105 S.Ct. at 1720. Moreover, the active supervision requirement also prevents a state from insulating private activity from federal antitrust laws "by casting a 'gauzy cloak of state involvement' over what is essentially private anticompetitive conduct." *Southern Motor Carriers,* 471 U.S. at 57, 105 S.Ct. at 1727 (quoting *Midcal,* 445 U.S. at 106, 100 S.Ct. at 943).

Because we conclude that the Council's activities are actively supervised by the state, it is not necessary to determine whether the Council is a state agency ex-

empt from the active supervision requirement. The Act itself provides for nearly constant state supervision of the Council. Two state officials are ex officio members of the Council. Wash.Rev.Code § 49.04.010.[2] The Council also submits an annual report to the state director of labor and industries on its activities and findings. *Id.* The Act also creates the position of supervisor of apprenticeship within the state department of labor and industries to advise and to monitor the Council. Wash. Rev.Code § 49.04.030. The supervisor of apprenticeship is appointed by and deputized as an assistant director to the state director of labor and industries. The Act provides:

> Under the supervision of the director of labor and industries and with the advice and guidance of [the Council], the supervisor shall: (1) Encourage and promote ... apprenticeship agreements conforming to the standards established by or in accordance with [the Act] ...; (2) act as secretary of [the Council] ... (3) when so authorized by [the Council], register ... apprenticeship agreements ... (5) terminate or cancel any apprenticeship agreements in accordance with the provisions of such agreements; and ... (6) may act to bring about the settlement of differences arising out of the apprenticeship agreement where such differences cannot be adjusted locally.

> .     .     .     .     .

Wash.Rev.Code § 49.04.030. It is the supervisor, a state official, rather than the Council who generally enforces and monitors compliance with apprenticeship agreements, including the wage regulation. The Council's activities under the Apprenticeship Act, as well as the activities of private parties to particular apprenticeship agreements, are monitored and supervised by the state, through the supervisor, the state director of labor and industries and their personnel. Wash.Rev.Code § 49.04.030. The supervisor retains authority to reject apprenticeship agreements. Wash.Admin.

Code 296–04–270(3)(a). *Cf. Southern Motor Carriers,* 471 U.S. at 50–52, 65, 105 S.Ct. at 1723–24, 1731 (granting state action immunity to "rate bureaus," private associations of common carriers, that submitted joint rate proposals to state regulatory agencies, noting the state agencies' authority to "accept, reject, or modify any recommendation"). Thus, though the Council's regulatory authority is extensive, it is exercised in the context of a structured and supervised regulatory system. The statutory scheme clearly requires the interaction of the state department of labor, through the supervisor, and the Council, in developing an apprenticeship system with the active participation of employer, employee and the state.

The plaintiffs' challenge to the apprenticeship system for inadequate supervision has a hollow sound when the scheme is examined. The plaintiffs are not injured by any want of supervision. It is the supervision and monitoring of the wages of apprentices by the state that inflicts the economic disadvantage upon plaintiffs. Without the state supervision, plaintiffs would probably not be interested in litigation of the question.

The Supreme Court's recent decision in *324 Liquor Corp. v. Duffy,* —— U.S. ——, 107 S.Ct. 720, 93 L.Ed.2d 667 (1987), does not alter our conclusion. In *324 Liquor,* the New York statute simply allowed individual wholesalers of certain beverages to "post" monthly price schedules, and prohibited retailers from selling below the posted price plus a certain markup percentage. The state agency in *324 Liquor* did not review or establish the posted wholesale prices. *Id.* 107 S.Ct. at 725–26. Nor did the state monitor market conditions, supervise the private wholesalers' posting decisions, or "engage in any 'pointed reexamination' of the program." *Id.* at 726 (quoting *Midcal,* 445 U.S. at 106, 100 S.Ct. at 943). In contrast, under the Washington apprenticeship system, the state, through

---

**2.** These ex officio members are state officials responsible for programs related to the apprenticeship system—the state public employment service and the vocational education commis-

sion. Wash.Rev.Code § 49.04.010. Their membership on the Council allows coordination between the apprenticeship system and other state programs with "overlapping" jurisdictions.

the supervisor, the apprenticeship division of the state department of labor, and the Council in effect exercises its regulatory authority in a coordinated fashion.

The judgment of the district court is AFFIRMED.